## Case No. 6,068.

### HARLEY et al. v. FOUR HUNDRED AND SIXTY-SEVEN BARS OF RAILROAD IRON, Etc.

[1 Sawy. 1.] [1]

District Court, D. California. Jan. 6, 1870.

SALVAGE CONTRACT BY MASTER SUSTAINED — ADDITIONAL COMPENSATION REFUSED.

A contract made by the master with salvors, for the recovery of the cargo of a sunken vessel, sustained.

[This was a libel brought by Charles Harley and others to recover compensation for salvage service.]

McAllisters & Bergin, for libellants.
Samuel M. Wilson, for claimants.

HOFFMAN, District Judge. There can be no question that the vessel and property saved were in a condition to be the subject of salvage service. The vessel had foundered and had sunk with her cargo to the bottom of the bay. The Reward, 1 W. ·Rob. Adm. 174; The Princess Alice, 3 W. Rob. Adm. 138; The Emulous [Case No. 4,480]; Bearse

---

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

v. Three Hundred and Forty Pigs of Copper [Id. 1,193]; The Centurion [Id. 2,554]. Nor does the fact that a contract was made, stipulating for the rate of compensation, to be paid in the event of and proportionate to the degree of success, affect the character of a salvage service.

Parties may agree on the amount of a salvage compensation, or on the principles upon which it shall be adjusted, and such agreements, if fairly made, and no advantage be taken of ignorance or distress, are readily upheld by the courts. The Independence [Case No. 7,014]; The Emulous [supra]; Bearse v. Three Hundred and Forty Pigs of Copper [supra]; The A. D. Patchin [Case No. 87]; The True Blue, 2 W. Rob. Adm. 176; The Henry, 2 Eng. Law & Eq. 564.

It is claimed by the salvors that their agreement was made under a misrepresentation of the facts, and that the service was more arduous and expensive than they had a right to anticipate. But it does not appear that any willful misrepresentation was made to them as to the position of the vessel. The precise depth of water in which she lay, and especially her position on the bottom in water twenty-five or thirty feet deep, were necessarily matters of conjecture, and the libellants, before entering into their contract, might have visited the wreck, ascertained its position, and estimated the chances and probable expense of the service.

Had she been found in shallower water, or more favorably situated than they supposed, they would hardly have consented to an abatement of the contract price. They cannot now demand an enhancement of it because the contrary has proved to be the case. But, even if the contract could be set aside, the libellants would thereby gain no advantage. Besides the railroad iron libelled in this case, the vessel herself was also saved, and restored to her owners. The saving of vessel and cargo constituted but one transaction—the former being dependent, to a great degree, on the previous success of the latter.

If the contract be set aside, the salvors will be entitled to a just compensation for the whole service to be paid by the owners of the vessel and cargo, in proportion to their respective interests. In that case they could only recover in this action the proportionate share of the total reward due from the cargo which has been libelled. This would certainly not exceed the amount agreed in the contract to be paid.

If, in this case, it had appeared that the master of the vessel had used the powers entrusted to him, to enter into an agreement by which the whole cost of saving both cargo and vessel should be thrown upon the owners of the former, and the vessel restored to her owners substantially without charge, I should not hesitate, notwithstanding that the master has a general authority to enter into contracts of this description, to pronounce the contract void, and not made in the execution of the master's duty to act fairly and impartially for the best interests of all concerned—the owners of the cargo as well as the vessel.

But I do not find any evidence that the amount of salvage agreed to be given was excessive, or beyond what might reasonably have been demanded if the saving of the cargo had been the sole object of the salvors' exertions. The proofs show that in point of fact the salvors' compensation will not cover their expenses, or at best will leave them but a slight and insufficient compensation.

I am not prepared to say, that if their reward were to be estimated upon the aggregate value of cargo and vessel, the share due from the former would be less than the compensation stipulated for in the contract. Had the owners of the cargo, on being apprised of the disaster, revoked the master's authority to contract for its salvage, and notified the proposed salvors that they would themselves undertake its recovery, and would not be bound by any agreements entered into by the master, the case might have been different. But no such steps were taken, and the salvors were permitted to undertake the service, incur large expenses, and encounter the risks of failure, without opposition or objection on the part of the owners of the cargo. I am also inclined to think, that had the latter undertaken the service, it would have been found nearly or quite as expensive as under the contract. But this, as I am not informed what were the means of effecting the service at the disposal of the owners of the cargo, is merely a conjecture.

Under all the circumstances, my opinion is that the libellants are entitled to recover the compensation agreed upon in their contract, and no more. As there seems to be some misunderstanding or confusion as to the precise number of tons of iron saved and delivered to the owners by them, a reference to ascertain that number may be taken, or the advocates of the respective parties may appear before the judge in chambers, and establish the facts.